IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| INCREDIBLEBANK,<br>　*Plaintiff,*<br><br>v.<br><br>FSNB, NATIONAL ASSOCIATION,<br>　*Defendant* | §<br>§<br>§<br>§<br>§　Case No. _____<br>§<br>§ |

### PLAINTIFF'S COMPLAINT

Plaintiff, IncredibleBank ("**Plaintiff**"), files this Complaint against Defendant, FSNB, National Association ("**FSNB** and/or "**Defendant**") and would respectfully show the Court as follows:

### PARTIES

1. Plaintiff is a financial institution with its corporate headquarters located at 327 N. 17th Ave, Wausau, WI 54401. Plaintiff is bringing its claims against Defendant.

2. FSNB is a national banking association with its corporate headquarters located at 1420 SW Lee Blvd., Lawton, OK 73501 ("Corporate Office"). As a national bank, FSNB may be served through a corporate officer at its Corporate Office.[1] Service is requested at this time.

### JURISDICTION AND VENUE

3. Plaintiff is a corporation incorporated under the laws of the State of Wisconsin with its principal place of business in Wisconsin and is therefore a citizen of Wisconsin for purposes of 28 U.S.C. § 1332(c)(1).

4. Defendant is a national banking association based upon a banking charter issued by the Office of the Comptroller of the Currency within the United States Department of the Treasury.

---

[1] National banks are not required to maintained registered agents in the states in which they operate.

042203.000001
7214144.2

A national bank's citizenship is determined by the state in which its "main office" is located, as designated in its articles of association. Defendant's main office is located in the City of Lawton, Comanche County, State of Oklahoma. 28 U.S.C. §1348 provides that national banks "shall, for the purposes of… actions by or against them, be deemed citizens of the States in which they are respectively located." In *Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006), the US Supreme Court held that a national bank is a citizen only of the State in which its main office is located,

5. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because this action is between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this District under 28 U.S.C. § 1391 because the principal corporate operations of Defendant where the check in question was processed are in the City of Lawton, which falls under the territorial jurisdiction of this Court.

## FACTS

7. This is a check fraud case involving a forged endorsement by a customer of FSNB. More specifically, money was improperly taken from Plaintiff's customer, Weinbrenner Shoe Company, Inc. ("**Weinbrenner**"), a Wisconsin company. Defendant, FSNB improperly opened an account for a fraudster, who was pretending to be the party to the check at issue in this matter. The fraudster appears to have presented paperwork to Defendant that was obtained after the check had been issued, and there were many suspicious facts regarding the opening of the account and the deposit of the check. Simply put, Defendant allowed its fraudulent customer to deposit a stolen check that should not have been negotiated by its fraudulent customer.

8. Weinbrenner's Check No. 43381 dated on or about November 20, 2024, in the amount of $79,837.57 (the "**Check**") was made payable to Channel Precision, LLC. The Check was apparently intercepted by a fraudster in the mail. FSNB improperly opened a bank account in

the name of the payee.[2] FSNB then allowed its fraudulent customer to improperly endorse, negotiate, and deposit the Check and obtain the proceeds.[3] The true intended payee did not receive the Check and/or the proceeds.

9. Plaintiff wants to recoup the $79,837.57 from Defendant FSNB as the funds were fraudulently obtained from Plaintiff's customer's account.

10. Plaintiff made multiple demands on Defendant FSNB for payment of the Check. To date, Defendant FSNB has not returned any portion of the money owed to Plaintiff. Neither Defendant nor its customer had any right to the proceeds from the Check. Defendant FSNB is obligated to pay Plaintiff the entire amount of the Check, and there is no reason why Defendant FSNB has not already returned the full $79,837.57. Defendant FSNB owed transfer and presentment warranties under the UCC. In other words, if FSNB's customer was not authorized to deposit, endorse, and/or negotiate the Check in dispute, then FSNB's customer breached its warranties to FSNB. Likewise, FSNB made similar warranties to Plaintiff and allowing the deposit and negotiation of the Check violated these warranties, as more fully discussed below.

## PLAINTIFF'S DIRECT CAUSES OF ACTION

### A. Breach of UCC Warranties

11. With regard to the UCC warranty issues, as more specifically described below, in accordance with UCC §4.207 and/or 4.208, FSNB, as an endorser, presentor, and/or transferor of the Check, warranted to Plaintiff that its customer was authorized to enforce the items, and that

---

[2] The Defendant's customer did not file any paperwork with the North Carolina Secretary of State until December 3, 2024.

[3] Defendant's customer did not open the account at Defendant until after the Check had been issued and stolen. Indeed, the fraudulent corporate entity banked by Defendant was not apparently created until after the Check was issued and stolen. The Defendant's corporate status was not recognized in North Carolina because it failed to pay its registration fee.

3

the proper endorsements had been obtained on the Check. Michael Shaw, as the fraudster, who was Defendant's customer(s), made the same warranties.

12. The Check was paid over to Defendant, who gave the funds to Defendant's customer (presumably Michael Shaw) even though Michael Shaw was not authorized to enforce the Check and the Check was wrongfully negotiated. Section 4-207 of the UCC provides in part that:

> (a) A customer or collecting bank that transfers an item and receives a settlement or other consideration warrants to the transferee and any subsequent collecting bank that:
>
>> (1) the warrantor is a person entitled to enforce the item;
>>
>> (2) all signatures on the item are authentic and authorized;
>
> * * * *
>
> (c) A person to whom the warranties under Subsection (a) are made and who took the instrument in good faith may recover from the warrantor as damages for breach of warranty an amount equal to the loss suffered as a result of the breach . . . .
>
> (d) The warranties stated in Subsection (a) cannot be disclaimed with respect to checks.

*See also*, UCC §§ 3-416, 3-417 and 4-208. In other words, by virtue of FSNB's transfer and/or presentment of the Check to Plaintiff, Defendant warranted that Defendant was entitled to enforce the items and all signatures were authentic and authorized, and that the Check was properly negotiated with proper signatures and warranties. Therefore, if a fact finder determines that the Check was improperly negotiated because the endorsement was forged or unauthorized and/or that the proper endorsements were missing (or FSNB was not entitled to enforce the items), Defendant will be held liable to Plaintiff for all damages sustained by Plaintiff as a result of the breach of warranty up to the face amount of the Check, plus any lost interest and all consequential damages,

4

including attorneys' fees and expenses, incurred by Plaintiff in connection with prosecution and/or defense of the claims associated with Michael Shaw's wrongful and fraudulent endorsement and presentment of the Check and FSNB's transfer and presentment of the Check.

10. More specifically, as discussed herein, FSNB accepted for deposit and then negotiated and presented the Check in dispute. FSNB transferred and/or presented the Check for payment to Plaintiff, thereby making the presentment and/or transfer warranties set forth in the UCC and causing Plaintiff to suffer damages.

B. **Money Had and Received**

11. Defendant is liable to Plaintiff for money had and received. The only thing that needs to be proved in a claim for money had and received "is that defendant holds money which in equity and good conscience belongs to [the plaintiff]." The cause of action is not premised on wrongdoing, but looks to the justice of the case and inquires whether the party has received money that rightfully belongs to another. The question in an action for money had and received is to which party the money, in equity and law, belongs. Here, Defendant, FSNB holds money or held money, which in equity and good conscience belongs to Plaintiff and/or its customer.

12. Several courts have held that claims for money had and received were recoverable where payment was made based on mistake, fraud, or in other similar circumstances.

13. Here, Defendant received the funds in the form of the stolen and fraudulently endorsed Check, and those funds belong to Plaintiff in equity and good conscience.

C. **Unjust Enrichment**

14. Likewise, Defendant was unjustly enriched from money that rightfully belongs to Plaintiff by retaining funds obtained from the Check. The doctrine of unjust enrichment applies to address such a situation. A party may recover under an unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.

042203.000001
7214144.2

15. Unjust enrichment is a cause of action based upon the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to repay. Unjust enrichment occurs when a person wrongfully secured a benefit or has passively received one which it would be unconscionable to retain.

20. A claim for unjust enrichment requires proof of the following elements: (1) Defendant obtained a benefit from Plaintiff by fraud, duress, or taking undue advantage; or (2) when a contemplated agreement is unenforceable, impossible, not fully performed, thwarted by mutual mistake, or void for other legal reasons.

21. "Unjust enrichment" is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits. A person is unjustly enriched when he obtains a benefit from another by fraud, duress, or the taking of an undue advantage. Here, Defendant wrongfully obtained the benefit of the Check from Plaintiff, which gives rise to Defendant's obligation to make restitution payments to Plaintiff in the amount of the Check - $79,837.57.

### D. Breach of Regulation CC Warranties and Other UCC Causes of Action

22. Regulation CC outlines specific requirements and obligations related to check collection and warranties. Specifically, Section 229.34 governs the warranties made by financial institutions when they accept checks. It stipulates that financial institutions are required to exercise ordinary care and follow the rules and guidelines for check acceptance. FSNB will likely try to claim that its customer properly endorsed the Check, but the maker determines the proper payee.

23. Even if the Court believes FSNB's possible arguments to the contrary, then Plaintiff would have "mistakenly" paid FSNB, and FSNB still holds Plaintiff's "mistaken" payment. Plaintiff is therefore entitled to recover from FSNB.

### E. **Plaintiff is Entitled to Receive its Attorneys' Fees, Costs, and Expenses**.

24.     Plaintiff should be awarded its attorneys' fees, costs, and expenses it incurred in having to bring this lawsuit. Defendant violated UCC warranties. Plaintiff therefore seeks such amounts as reasonable and necessary attorneys' fees incurred in this matter, plus additional fees and costs, including appellate fees and costs.

25.     Various cases allow attorneys' fees under transfer and/or presentment warranties. *See, e.g., First Virginia Bank-Colonial v. Provident State Bank*, 38 UCC Rep. Serv. 561, 582 F. Supp. 850 (D. Md. 1984); *First Nat'l Bank of Neenah v. Security Nat'l Bank of Springfield,* 32 UCC Rep. Serv. 926 (D. Mass. 1981); *Southern Provisions, Inc. v. Harris Trust & Savings Bank*, 31 UCC Rep. Serv. 640, 96 Ill. App. 3d 745, 422 N.E.2d 33 (1981). Thus, Plaintiff seeks to recover its attorneys' fees, costs, and expenses on this ground as well.

26.     The Fifth Circuit Court of Appeals has held that UCC Section 4-207 includes attorneys' fees in the amount recoverable by a bank to whom the transfer warranty runs. *See Perkins State Bank v. Connolly*, 632 F.2d 1306, 1315 (5th Cir. 1980). In *Perkins State Bank*, Hanover Bank brought a breach of transfer warranty counterclaim and was entitled to receive the attorneys' fees spent in defense of the claim as an element of damages. *Id*. at 1316. Hanover Bank had issued a cashier's check that was fraudulently endorsed and deposited into a trust account at Perkins State Bank. *Id*. at 1308. Perkins State Bank was found to be liable to Hanover for a breach of Florida's UCC Section 4-207 transfer of warranty. The court read § 4-207 to establish a right of indemnity under state law. *Id*. at 1315. The court based its reasoning on an 8th Circuit Court of Appeals decision which found that attorneys' fees incurred in defense of the claim are a part of the damages sought in an indemnity action under state law and therefore allowed under § 4-207. *Id*. (citing *Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 491 F.2d 192 (8th Cir. 1974).

27.     Other courts have held that attorneys' fees can be awarded in a suit for breach of transfer warranty in regards to a negotiable instrument under § 4-207 of the UCC, which provides that attorneys' fees be awarded as expenses in appropriate cases. *Guaranty Bank & Trust Co. v. Federal Reserve Bank of Kansas City*, 454 F. Supp. 488, 492 (W.D. Okla. 1977) (*citing* U.C.C. § 4-207 cmt. 5 (amended 2002)).  The court in *Guaranty Bank & Trust Co. v. Federal Reserve Bank of Kansas City* found that it was appropriate to award attorneys' fees as expenses to the payor bank where a collecting bank breached a transfer of warranty when it presented a fraudulent cashier's check to the payor bank. *Id*.  *See also*, *First Virginia Bank-Colonial v. Provident State Bank*, 582 F. Supp. 850, 852 (D. Md. 1984).  The court analyzed that Comment 5 to UCC Section 4–207 transfer of warranty requires the court to decide whether a particular case is an "appropriate" one for the inclusion of attorneys' fees in the expenses recoverable under UCC Section 4–207(3). *Id*. at 852.  The court held that when a payor bank must enforce the clear warranty liability of the depositary bank through litigation, the payor bank is entitled to attorneys' fees. *Id*.

### CONDITIONS PRECEDENT

28.     Any and all conditions precedent to Plaintiff's right to bring this lawsuit and recover from Defendant have been fully performed by Plaintiff or have occurred.

### PRAYER

Plaintiff, IncredibleBank, prays that Defendant be cited to appear and answer and that the Court grant Plaintiff Judgment against Defendant as follows:

(a)     For all recoverable actual, special, and/or equitable damages or remedies as are set forth herein and at the time of trial;

(b)     For pre-judgment and post-judgment interest as provided by law;

(c)     For reasonable and necessary attorneys' fees at all stages of trial and appeals; and

8

(d)     For all such other and further relief, at law or in equity, to which Plaintiff may be justly entitled as determined by this Court.

                                               Respectfully submitted,

CRAIN CATON & JAMES

                                        /s John D. Clayman
                                        John D. Clayman, OBA #11790[4]
                                        1401 McKinney, Suite 1700
                                        Houston, Texas 77010
                                        (713) 658-2323 Main
                                        (713) 658-1921 Fax
                                        jclayman@craincaton.com

**ATTORNEYS FOR PLAINTIFF, INCREDIBLEBANK**

---

[4] John D. Clayman resides in the City of Tulsa, State of Oklahoma. No local counsel is required pursuant to LCvR83.3 of the Local Civil Rules.